NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| PIPPIN J. FOLK, *also known as*, MALIK JOHNSON, | |
| Plaintiff, | Civil Action No. 18-2222 (BRM) |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security, | **OPINION** |
| Defendant. | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is Pippin J. Folk's, also known as Malik Johnson ("Plaintiff"), appeal from the final decision of the Acting Commissioner of Social Security ("Defendant")[1] denying his application of Social Security Disability Insurance Benefits ("SSDI") and application for Supplemental Security Income ("SSI"). (ECF No. 8.) Having reviewed the administrative record and the submissions filed in connection with the appeal pursuant to Local Civil Rule 9.1, and having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the reasons set forth below and for good cause shown, the matter is **AFFIRMED**.

---

[1] Defendant adopted the decision of the Administrative Law Judge ("ALJ") which concluded Plaintiff was not disabled under the relevant standards, and issued a written decision denying his application on July 13, 2016 (the "ALJ Decision"). (Tr. 23-43.)

**I.   BACKGROUND**

Plaintiff applied for SSDI and SSI benefits in March 2013, alleging disability beginning July 1, 2007, due to affective/mood disorders. (Tr. 124-25.) His claim was denied initially on July 8, 2013, and on reconsideration on January 13, 2014. (Tr. 23-25, 170-72.) On February 28, 2014, Plaintiff filed a written request for an administrative hearing. (Tr. 176.) On March 15, 2016, a hearing was held where Plaintiff appeared and testified. (Tr. 44-45.) Impartial vocational expert, Louis P. Szollosy, also appeared and testified at the hearing. (Tr. 45.) On July 13, 2016, the ALJ concluded Plaintiff was not disabled. (Tr. 38.) Specifically, she found Plaintiff: (1) met the insured status requirements of the Social Security Act; (2) had not engaged in substantial gainful activity since July 1, 2007; (3) had two severe impairments, affective disorder and anxiety disorder; (4) did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments; (5) had an RFC to perform a full range of work at all exertional levels but with a couple of nonexertional limitations; (6) was unable to perform any past relevant work; and (7) could find jobs based on his age, education work experience, and RFC that exist in significant numbers in the national economy. (Tr. 28-38.) The Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the Commissioner's final decision. (Tr. 1-6.) Having exhausted his administrative remedies, Plaintiff filed this action seeking review of the Commissioner's final decision on February 1, 2018. (ECF No. 1)

**II.   STANDARD OF REVIEW**

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*,

239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). However, this Court may not "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992) (citation omitted). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999) (citations omitted).

### III.  THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Social Security Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. §§ 423(d)(1)(A), 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity when his physical or mental impairments are "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage

in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Regulations promulgated under the Social Security Act establish a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a)(1). First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* §§ 404.1520(b), 416.920(b); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at §§ 404.1520(d), 416.920(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those

4

listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679-80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an administrative law judge must provide the reason for providing more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step

requires the administrative law judge to "show [that] there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428. In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.* (citation omitted). Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings." *Id.* at 263 n.2 (citing *Bowen*, 482 U.S. at 146-47 n.5). An administrative law judge bears the burden of proof for the fifth step. *See id.* at 263.

### IV. PLAINTIFF'S APPEAL OF THE COMMISSIONER'S ADOPTION OF THE ALJ DECISION

Plaintiff challenges the ALJ Decision on several grounds. First, he argues the ALJ erred in rejecting the opinions of Dr. Houg Chen and Hunterdon Behavioral Health in making its step-three analysis. (ECF No. 8 at 18-28.) Second, Plaintiff argues the ALJ failed to fully develop the record because it did not consider Middlesex County prison records that were submitted after the record closed. (*Id.* at 28-29.) Third, he contends the ALJ erred by rejecting Arden Fushman, M.D.'s ("Dr. Fushman") opinion by not considering the effect of Plaintiff's severe back pain on his ability to work. (*Id.* at 30-32.)

### A. Plaintiff's Challenge to the ALJ's Step Three Determination and Rejection of Dr. Chen and MaryAnne Foley-Mayor's Opinions

Plaintiff argues the ALJ erred in in finding that he "does not have an impairment or combination of impairments that medically equals the severity of one of the listed impairments" because it erred in rejecting the impairment questionnaire completed by MaryAnne Foley-Mayor, RN ("Nurse Foley-Mayor") and signed off by Dr. Chen. (*Id.* at 21.) Moreover, Plaintiff contends that the ALJ rejected the opinions of Nurse Foley-Mayor and Dr. Chen without considering and explaining her reasons for discounting their pertinent evidence in making her determination. (*Id.*)

During step three, the ALJ compares the medical evidence of a claimant's impairments with the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listed impairments" or "listings"), which are presumed severe enough to preclude any gainful work. *See Holley v. Colvin*, 975 F. Supp. 2d 467, 476 (D.N.J. 2013), *aff'd*, 590 F. App'x 167 (3d Cir. 2014). The listings articulated in 20 C.F.R. Pt. 404, Subpt. P., App. 1, are descriptions of various physical and mental illnesses and abnormalities, categorized by the body system they affect. *Sullivan v. Zebley*, 493 U.S. 521, 529-30 (1990). All impairments are defined "in terms of several specific medical signs, symptoms, or laboratory test results." *Id.* at 530. "If a claimant's impairment meets or equals one of the listed impairments, he will be found disabled. . . . If the claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to step four." *Holley*, 975 F. Supp. 2d at 476. To be found disabled, however, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan*, 493 U.S. at 531.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Id.*; *see* Social Security Ruling (SSR) 83—19, Dep't of Health & Human Servs. Rulings 90 (Jan. 1983) ("An impairment meets a listed condition . . . only when it

7

manifests the specific findings described in the set of medical criteria for that listed impairment."); 20 C.F.R. § 416.926(a) (1989) (noting that a claimant's impairment is "equivalent" to a listed impairment "if the medical findings are at least equal in severity and duration to the criteria of any listed impairment") "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531-32 (citing SSR 83–19, at 91–92 ("[I]t is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment. . . . The functional consequences of the impairments . . . irrespective of their nature or extent, *cannot* justify a determination of equivalence" [sic]) (emphases in original)).

To conclude an applicant is not disabled under step three, the ALJ must "set forth the reasons for [her] decision" for her step-three analysis. *Burnett*, 220 F.3d at 119. Conclusory statements have been found to be "beyond meaningful judicial review." *Cotter v. Harris*, 642 F.2d 700, 704-05 (3d Cir. 1981). In *Burnett*, the Third Circuit remanded the matter because the ALJ made only conclusory statements without mentioning any specific listed impairments or explaining his reasoning. *Burnett*, 220 F.3d at 119-20 (finding "although [the plaintiff] has established that she suffered from a severe musculoskeletal [impairment], said impairment failed to equal the level of severity of any disabling condition contained in Appendix 1, Subpart of Social Security Regulations No. 4."). In *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008), the court found "the ALJ failed at step three by failing to consider [the plaintiff's] impairments in combination when determining medical equivalence." Further, the "ALJ failed to combine [the plaintiff's] many medical impairments and compare them to analogous Appendix 1 listings." *Id.* The ALJ's entire analysis consisted of one cursory paragraph stating:

> Regarding steps two and three, the evidence establishes the existence of a "severe" impairment involving left-eye blindness, diabetes, hepatitis C and cirrhosis, degenerative disc disease of the lumbar spine, bronchitis, and depression, but does not disclose any medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P to Regulations No. 4.

*Id.*

As the Third Circuit has explained, the ALJ is not required to "use particular language or adhere to a particular format in conducting his analysis . . . [but must] ensure that there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). The ALJ satisfies this standard by "clearly evaluating the available medical evidence in the record and then setting forth that evaluation in an opinion, even where the ALJ did not identify or analyze the most relevant Listing." *Scatorchia v. Comm'r of Soc. Sec.*, 137 F. App'x 468, 470–71 (3d Cir. 2005).

Listings 12.04 and 12.06 provide multiple ways to demonstrate the existence of a severe mental impairment based on satisfying certain criteria. Both listings have "A Criteria," "B Criteria," and "C Criteria." For impairments under 12.04 (affective disorders), the severity requirements are met if "*both* A *and* B are satisfied, *or* when the requirements in C are satisfied." 20 C.F.R. Part 404, Subpart P, Appendix 1 (emphasis added). Listing 12.06 is slightly different; the severity requirements under listing 12.06 are met "when the requirements in *both* A *and* B are satisfied, *or* when the requirements in *both* A *and* C are satisfied. *Id.* (emphasis added).

The "B Criteria" for listings 12.04 and 12.06 are the same, and require a showing that the applicant have "at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended

9

duration." *Id.* Criteria C would require Folk to demonstrate a disorder "resulting in complete inability to function independently outside the area of one's home." 20 C.F.R. Part 404, Subpart P, Appendix 1, para. 12.06(c).

Here, the ALJ did not err at step three of the sequential analysis, but instead made a reasoned decision supported by substantial evidence in the record, such as Plaintiff's contentions, treating physicians, and state examiners. *See Jakubowski v. Comm'r*, 215 F. App'x 104 (3d Cir. 2007) (stating that an ALJ's decision as to the severity of impairments is supported by substantial evidence when the ALJ cites to specific medical records in his decision). The ALJ has supported its denial with substantial evidence. Whether or not this Court would have decided the inquiry differently is of no importance. *Hartranft*, 181 F.3d at 360.

Indeed, the ALJ devoted approximately a page and a half of her decision to her step-three analysis and finding and considered singly and in combination Plaintiff's mental health impairments and compared them to listings 12.04 and 12.06. In addition, the ALJ incorporated by reference her RFC assessment to further her step-three analysis, which is approximately six pages. Specifically, she found:

> The claimant's representative does not contend that a listing has been met or equaled. Moreover, no treating or examining physician has mentioned any findings equivalent in severity to any listed impairment, nor are such findings indicated or suggested by the medical evidence of record. Nevertheless, I have carefully considered the specific requirements of the relevant listings, and am satisfied that no listing is met or equaled.
>
> The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 and 12.06. In making this finding, I have considered whether the "paragraph B" criteria are satisfied. To satisfy the "paragraph B" criteria, the mental impairments must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration,

persistence, or pace; or repeated episodes of decompensation, each of extended duration. A marked limitation means more than moderate but less than extreme. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.

In activities of daily living, the claimant has moderate restriction. The claimant is able to drive. He was taking his children to the park. He testified that he can make himself something to eat. He does the laundry and can sweep and dust.

In social functioning, the claimant has moderate difficulties. The claimant reported that he does not have friends, just associates. He said he is distrustful of others and thinks people are lying 90% of the time. He thinks people are watching him (Exhibit 7F). He spends his days talking to other residents. He goes to a food bank.

With regard to concentration, persistence or pace, the claimant has mild difficulties. The claimant reported that he spends time reading. He was attending school to become an electrician. He does not have a television. He does not have difficulty reading fiction. He can pay bills, and make change. He said worry interferes with following instructions.

As for episodes of decompensation, the claimant has experienced no episodes of decompensation, which have been of extended duration.

Because the claimant's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied.

I have also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. There is no evidence demonstrating the claimant has had repeated episodes of decompensation each of extended duration; that he has a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate or that he has a current history of 1 or more years' inability to function outside a highly supportive live arrangement with an indication of continued need for such arrangement.

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following residual functional capacity assessment reflects the degree of limitation I have found in the "paragraph B" mental function analysis.

(Tr. 30-31.)

In addition, the ALJ, contrary to Plaintiff's argument, considered Nurse Foley-Mayor's and Dr. Chen's opinions and properly rejected them. In making a disability determination, the ALJ must consider all evidence before her. *See, e.g.*, *Plummer*, 186 F.3d at 433; *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986). Although the ALJ may weigh the credibility of the evidence, she must give some indication of the evidence which she rejects and her reasons for discounting such evidence. *Burnett*, 220 F.3d at 121; *Cotter*, 642 F.2d at 705. In *Burnett*, the Third Circuit held the ALJ had not properly decided an evidentiary issue because he "fail[ed] to consider and explain his reasons for discounting all of the pertinent evidence before him in making his residual functional capacity determination." 220 F.3d at 121. "In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Consequently, an ALJ's failure to note if evidence that contradicts her findings was considered, or to explain why such information was not credited, are grounds for a remand. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 435 (3d Cir. 1999). However, this rule does not require an ALJ to explicitly discuss every piece of relevant evidence in her decision. *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001). For example, an ALJ may be entitled to overlook evidence that is neither pertinent, relevant, nor particularly probative.

*Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008); *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004).

Additionally, when the record presents inconsistencies with a physician's ultimate opinion or where the physician's notes actually undermine his own opinion, an ALJ may appropriately discount the physician's opinion. *See Burke v. Comm'r of Social Security*, 317 F. App'x 240, 243-44 (3d Cir. 2009). Although the ALJ must not "reject evidence for no reason or for the wrong reason, [he] may choose whom to credit when considering conflicting evidence." *Kerdman v. Comm'r of Soc. Sec.*, 607 F. App'x 141, 144 (3d Cir. 2015) (quotations omitted). A reviewing court "may not re-weigh the evidence." *Id.* Thus, even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is supported by substantial evidence. *Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986)

Here, the ALJ articulated in her RFC analysis, which was incorporated into her step-three analysis, Nurse Foley-Mayor and Dr. Chen's contradictory opinion and why she rejected it. Specifically, the ALJ stated:

> Mary Ann Foley-Mayor, RN, APN, cosigned by Dr. Chew [sic], completed a Mental Impairment Questionnaire in March 2016 finding the claimant was unable to meet competitive standards remembering work-like procedures, maintaining attention for two hour segment [sic], working in coordination with or in proximity to others without being unduly distracted, completing a normal workday and workweek without interruptions from psychologically based symptoms, accepting instructions and responding appropriately to criticism from supervisors, getting along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes, responding appropriately to changes in a routine work setting, dealing with normal work stress, or dealing with stress of semiskilled and skilled work. Ms. Foley indicated that claimant has marked difficulties in maintaining social functioning and difficulties in maintaining concentration, persistence or pace, and one or two episodes of decompensation and would be absent about one day per month. I assign little eight to these opinions as they are based on only 5 visits beginning in March 2015. Further,

> the treatment records, including the lack of mental status evaluation, do no support such severe limitations.

(Tr. 36.)

Since the function of this Court is simply to ensure that the ALJ's decision was supported by substantial evidence, the Court finds the ALJ made a sound decision based on the evidence that Plaintiff does not equal a listed impairment. The Court also find's the ALJ properly considered and discounted Nurse Foley-Mayor and Dr. Chen's opinions. This Court cannot apply a more stringent standard than that of "substantial evidence," nor can it act as the fact-finder. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360-61 (3d Cir. 2004). The administrative record provides this Court with "more than a mere scintilla" of evidence to support the ALJ's decision. *Jones*, 364 F.3d at 503 (defining substantial evince as "less than a preponderance of the evidence but more than a mere scintilla"). Accordingly, the ALJ's decision and Commissioner's denial of review at step-three is **AFFIRMED** and the Court finds the ALJ properly considered Nurse Foley-Mayor's and Dr. Chen's opinion.

### B. Plaintiff's Challenge to the Middlesex County Prison Records

Plaintiff argues the ALJ failed to fully develop the record because it did not consider Middlesex County prison records that were submitted after the record closed. (Tr. 28.) The Court disagrees. This evidence was in fact considered and explicitly discussed by the ALJ in its decision. (Tr. 28-29, 33.) The ALJ explicitly referenced the prison records and stated, "In March 2008, the claimant was taking Zoloft and Depakote. He said he was diagnosed with bipolar disorder and anxiety. He appeared to be well-managed on his medications. In April 2010, he was diagnosed with anxiety disorder and depressive disorder. He was noted to be stable." (Tr. 33.) The ALJ need not "cite all evidence a claimant presents." *Johnson*, 529 F.3d at 204. Accordingly, the ALJ decision is **AFFIRMED**.

### C. Plaintiff's Challenge to the ALJ's Rejection of Dr. Fusman's Opinion

Plaintiff argues the ALJ erred in rejecting Dr. Fusman's opinion regarding his back-pain's effect on his ability to work. (ECF No. 8 at 30-32.) The Court disagrees.

Not only did the ALJ consider Dr. Fusman's opinion but substantial evidence supports the little weight the ALJ gave to Dr. Fusman's opinions that Plaintiff was mildly limited in his ability to walk and stand and moderately limited in his ability to bend, crouch, stoop, lift, and carry. (Tr. 36.) The ALJ concluded Dr. Fusman's opinions were "not based on any objective medical testing and appear to be solely based on the claimant's reported pain." (*Id.*) There is substantial evidence in the record to support this conclusion.

Although Dr. Fusman stated in December 2013 that Plaintiff has some limited lumbar spine range of motion, he also had normal range of motion otherwise, negative straight leg raise test results, normal sensation, normal reflexes, and a relatively normal gait. (Tr. 495, 498-501.) Plaintiff was also able to climb on and off the examination table, dress independently, squat halfway down, and walk on his heals and toes. (*Id.*) Moreover, at visits with Hunterdon Behavioral in September 2013, January 2015, August 2015, and January 2016, Plaintiff demonstrated a normal build/stature, mostly normal posture, unremarkable muscle strength and tone, and unremarkable gait. (Tr. 495, 583, 703-04, 715-16.)

Because the ALJ provided valid reasons for rejecting Dr. Fusman's opinion based on the record, it was proper to discredit his opinions. *Kerdman*, 607 F. App'x at 144. This Court cannot "re-weigh the evidence." *Id.* Even if there is contrary evidence in the record that would justify the opposite conclusion, the ALJ's decision will be upheld if it is supported by substantial evidence. *See Simmonds*, 807 F.2d at 58. Accordingly, the ALJ's decision is **AFFIRMED**.

## V. CONCLUSION

For the reasons set forth above, the matter is **AFFIRMED**.

**Date:** April 29, 2019                             */s/ Brian R. Martinotti*
                                                     **HON. BRIAN R. MARTINOTTI**
                                                     **UNITED STATES DISTRICT JUDGE**